THE HONORABLE KYMBERLY K. EVANSON

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

## AT SEATTLE

| | |
|---|---|
| IN THE MATTER OF: G.P., an individual, | Case No. 2:26-cv-00284-KKE |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO** |
| | **DEFENDANT TURO, INC.'S** |
| v. | **MOTION TO COMPEL** |
| | **ARBITRATION AND STAY** |
| JOSE HERNANDEZ AREVALO, an individual; | **ACTION** |
| MARICELA JIMENEZ, an individual; | |
| TURO, INC., a Delaware corporation; et al., | NOTE ON MOTION CALENDAR: |
| | May 12, 2026 |
| Defendants. | ORAL ARGUMENT REQUESTED |
| | Presented to: The Honorable Kymberly |
| | K. Evanson |

PLAINTIFF'S OPPOSITION TO MTC
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION.........................................................................................................1

II. STATEMENT OF FACTS ........................................................................................2

    A. Plaintiff G.P. Is Secretly Recorded and Her Life Is Destroyed....................................2

    B. Turo's Clickwrap Sign-Up Flow...................................................................................3

    C. Turo's Arbitration Clause..............................................................................................4

    D. Procedural Posture.......................................................................................................4

III. LEGAL STANDARD ..............................................................................................4

IV. ARGUMENT ...........................................................................................................5

    A. THE ENDING FORCED ARBITRATION OF SEXUAL ASSAULT AND SEXUAL HARASSMENT ACT CATEGORICALLY BARS ENFORCEMENT OF TURO'S ARBITRATION CLAUSE AS TO THIS ENTIRE ACTION...........................................5

        1. This Dispute "Relates to" Sexual Harassment Under Applicable Law. ................5

        2. The EFAA Voids the Entire Arbitration Agreement, Not Just the Harassment Claims. ....................................................................................................................6

        3. The Court — Not the Arbitrator — Decides EFAA Applicability.........................6

    B. THE COURT — NOT AN ARBITRATOR — DECIDES THE THRESHOLD QUESTIONS HERE, BECAUSE PLAINTIFF SPECIFICALLY CHALLENGES THE DELEGATION PROVISION AS INDEPENDENTLY UNCONSCIONABLE ..............7

        1. The Express Delegation Clause Is Independently Unconscionable.......................7

        2. In the Alternative: Even If Delegation Clause Reaches Arbitrability, The Court Applies Heckman's "Agreement as a Whole" Standard. ..........................................8

    C. TURO'S ARBITRATION CLAUSE IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE UNDER WASHINGTON LAW.................8

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300   Fax +1.206.274.6401

1. Procedural Unconscionability...................................................................9

2. Substantive Unconscionability.............................................................10

D. G.P.'S CLAIMS ARISE FROM CRIMINAL CONDUCT AND AN INDEPENDENT

LEGAL DUTY — AND THE NINTH CIRCUIT HAS SPECIFICALLY HELD THAT

WIRETAPPING CLAIMS OF THIS CHARACTER CANNOT BE ARBITRATED ...11

1. *Jackson v. Amazon.com*: Wiretap Claims Outside Contract Scope Cannot Be

Arbitrated. ..........................................................................................11

2. The Federal Wiretap Act's Crime-Tort Exception Applies.................................11

3. The Airbnb/Turo Hidden-Camera Cases Support Non-Arbitrability. .................12

E. PUBLIC POLICY AND THE ANTI-"INFINITE ARBITRATION CLAUSE"

DOCTRINE BAR ENFORCEMENT AGAINST A CRIME VICTIM...........................12

F. PLAINTIFF'S PUBLIC-INJUNCTIVE-RELIEF CLAIMS ARE NOT ARBITRABLE

UNDER McGILL AND BLAIR ...................................................................13

G. IN THE ALTERNATIVE, THE COURT SHOULD ORDER LIMITED FORMATION

DISCOVERY AND DENY ANY STAY OF PROCEEDINGS AGAINST THE NON-

TURO DEFENDANTS ..............................................................................13

V. CONCLUSION ........................................................................14

PLAINTIFF'S OPPOSITION TO MTC - ii
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Adler v. Fred Lind Manor,    153 Wn.2d 331, 103 P.3d 773 (2004)......................................9

AT&T Mobility LLC v. Concepcion,    563 U.S. 333 (2011)............................................4

Berman v. Freedom Financial Network, LLC,    30 F.4th 849 (9th Cir. 2022).......................9

Bielski v. Coinbase, Inc.,    87 F.4th 1003 (9th Cir. 2023)............................................7

Blair v. Rent-A-Center, Inc.,    928 F.3d 819 (9th Cir. 2019) ...............................13, 14

Burnett v. Pagliacci Pizza, Inc.,    196 Wn.2d 38, 470 P.3d 486 (2020)................................9

Castillo v. Altice USA, Inc., 698 F. Supp. 3d 652 (S.D.N.Y. 2023)........................................6

Godfrey v. Hartford Cas. Ins. Co.,    142 Wn.2d 885, 16 P.3d 617 (2001)...........................10

Heckman v. Live Nation Entertainment, Inc.,    120 F.4th 670 (9th Cir. 2024)............8,12, 14

Hodgin v. Intensive Care Consortium, Inc., 666 F. Supp. 3d 1326 (S.D. Fla. 2023)................6

Jackson v. Amazon.com, Inc.,    65 F.4th 1093 (9th Cir. 2023)..................................2, 11, 14

Johnson v. Everyrealm, Inc.,    657 F. Supp. 3d 535 (S.D.N.Y. 2023) .................................5

Kilgore v. KeyBank, N.A.,    718 F.3d 1052 (9th Cir. 2013) (en banc)..................................9

Krzyzek v. OpenX Techs., Inc. 817 F. Supp. 3d 857 (N.D. Cal. 2026).................................12

McGill v. Citibank, N.A.,    2 Cal. 5th 945 (2017)....................................................13

Morgan v. Sundance, Inc.,    596 U.S. 411 (2022) .....................................................4

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,    460 U.S. 1 (1983) ......................14

Reichert v. Rapid Invs., Inc.,    56 F.4th 1220 (9th Cir. 2022)..................................4

Rent-A-Center, West, Inc. v. Jackson,  561 U.S. 63 (2010)..................................7, 13

Sanford v. MemberWorks, Inc.,    483 F.3d 956 (9th Cir. 2007)..........................................13

Semien v. PubMatic Inc., 2026 WL 216333 (N.D. Cal. Jan. 27, 2026)................................12

Turner v. Tesla, Inc.,    686 F. Supp. 3d 917 (N.D. Cal. 2023)................................5

PLAINTIFF'S OPPOSITION TO MTC - iii
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

Wilson v. Huuuge, Inc.,    944 F.3d 1212 (9th Cir. 2019)........................................................9

Zuver v. Airtouch Communications, Inc.,    153 Wn.2d 293, 103 P.3d 753 (2004) ...............8

**STATUTES**

9 U.S.C. § 2 .............................................................................................................................5

9 U.S.C. §§ 401–402 (Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act)

    ...........................................................................................................................................1

9 U.S.C. § 401(4)....................................................................................................................5

9 U.S.C. § 402(a) ............................................................................................................ 1, 5, 7

9 U.S.C. § 402(b)....................................................................................................................7

18 U.S.C. § 1801 (Video Voyeurism Prevention Act) ................................................... 1, 2, 12

18 U.S.C. § 2511(2)(d) ..........................................................................................................12

18 U.S.C. § 2511 (Electronic Communications Privacy Act) ........................................... 2, 12

RCW 9.73.030 ............................................................................................................... 1, 2, 12

RCW 9A.44.115 ............................................................................................................. 1, 6, 12

RCW 19.86.............................................................................................................................14

RCW 49.60.030 .......................................................................................................................6

**RULES**

Fed. R. Civ. P. 30(b)(6) .........................................................................................................14

PLAINTIFF'S OPPOSITION TO MTC - iv
(2:26-cv-00284-KKE)

## I. INTRODUCTION

Turo seeks to force a woman secretly filmed inside a rented vehicle --- a federal crime (18 U.S.C. § 1801) and a Washington crime (RCW 9.73.030; RCW 9A.44.115) --- into confidential arbitration designed to bury the claim, deny her a jury, and silence the next victim. The theory: a single mother who clicked 'I agree' to rent a Nissan Leaf for $60 has prospectively waived her right to a jury trial for criminal conduct committed against her body and dignity.

Congress has already answered. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2022 (EFAA), 9 U.S.C. §§ 401–402, renders this arbitration agreement unenforceable at Plaintiff's election — as a matter of federal statute, before the Court even reaches unconscionability or scope. The recording of a woman in a confined space, its deliberate dissemination to humiliate her, the gender-based harassment tsunami followed. Thousands of comments including explicit sexual threats and comments about her body, and Turo's own knowledge of and response to Arevalo's conduct, together constitute a "sexual harassment dispute" under applicable federal, state, and local law. The EFAA's text is unambiguous: "notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable." 9 U.S.C. § 402(a). Plaintiff elects to proceed in court.

But this opposition does not rest on the EFAA alone. Even absent the EFAA, the FAA does not require — and the Due Process Clause does not permit — the result Turo seeks:

1. Turo's clause is an adhesive clickwrap buries a jury-trial waiver, class waiver, and delegation clause behind a purple hyperlink on a mobile sign-up screen used by a nurse in a hurry who never read, never clicked, never scrolled the Terms, and never knew she was surrendering her right to a jury trial or her right to have a court — not a Turo-selected arbitrator — decide whether she had any rights at all.

PLAINTIFF'S OPPOSITION TO MTC - 1
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

2. The Ninth Circuit has directly held wiretapping claims arising independently of a contract's subject matter cannot be sent to arbitration. *Jackson v. Amazon.com, Inc.,* 65 F.4th 1093 (9th Cir. 2023). G.P.'s claims under RCW 9.73.030, the Electronic Communications Privacy Act (18 U.S.C. § 2511), and the Video Voyeurism Prevention Act (18 U.S.C. § 1801) exist entirely independent of any Turo Term. Turo's own in-house counsel has admitted Arevalo was permanently removed from the platform for his conduct — an admission Turo itself recognizes the conduct as wrongful and outside anything it endorsed, authorized, or contracted for.

3. The clause is the retroactive, limitless 'infinite arbitration clause' condemned in Heckman, and G.P.'s statutory claims arise independently of any Turo Term.

The motion should be denied.

## II. STATEMENT OF FACTS

### A. Plaintiff G.P. Is Secretly Recorded and Her Life Is Destroyed

On August 23, 2025, Plaintiff G.P. — a registered nurse, single mother of two, and MS patient — used the Turo mobile app to book a one-day rental of a 2013 Nissan Leaf from host Jose Hernandez Arevalo. Unbeknownst to her, Arevalo had installed an interior-facing recording device in the vehicle. Arevalo told G.P. only there was a "dash cam installed on the vehicle just for safety" she was "more than welcome to unplug" — a disclosure a reasonable consumer interprets as a standard external dashcam, not as a device pointed at the driver's face, recording her private emotional responses, her intimate phone calls, and her expressions of vulnerability inside what she understood to be a private space.

The recording captured G.P.'s strong emotional reaction to a car crash during the rental, private and intimate conversations with her boyfriend, and other conduct she would never have engaged in had she known she was being filmed. Arevalo then deliberately disseminated the recordings across multiple public platforms — Meta, Reddit, YouTube, Atlanta Black Star, and

PLAINTIFF'S OPPOSITION TO MTC - 2
(2:26-cv-00284-KKE)

Inside Edition — with the evident purpose of humiliating her. He was subsequently banned from the Turo platform for this conduct, a fact Turo's own Associate General Counsel, Matt Brown, admitted in a recorded conversation with Plaintiff's counsel on March 9, 2026. (See Declaration of Ronald G. Rossi, ¶¶ 4–7, filed herewith.)

The consequences to G.P. have been catastrophic. She received thousands of threatening and sexually explicit communications targeting her as a woman, was forced to delete her social media accounts, alert her employer, take two months of unpaid medical leave, and implement safety protocols at her workplace. She was hospitalized inpatient from February 1 through March 3, 2026, suffering severe physical illness exacerbated by stress-induced panic attacks so severe they required additional medications and were witnessed by her boyfriend and friends. Her church removed her photo from its website. Her children cannot play outside. She has worn disguises in public. She changed her phone number. All of this from a $60 car rental.

**B. Turo's Clickwrap Sign-Up Flow**

On April 16, 2025, G.P. created a Turo account on her phone. She was in a hurry — Enterprise had no vehicles, she had tried rideshare and taxi alternatives, and she needed to get to work the next morning. The sign-up screen showed fields for her name, email, and password, a checkbox labeled "I agree to the terms of service and privacy policy," and a "Sign up" button. G.P. did not click the hyperlink, did not see the Terms, did not scroll through any document, did not see language about arbitration or opt-out, and did not understand she was waiving jury trial, class action rights, or the right to have a court decide her rights. (G.P. Decl. ¶¶ 1–5, filed herewith.) The full Terms — 22+ single-spaced pages — place the arbitration and delegation provisions at pages 22–23, accessible only through a purple hyperlink and never presented to the user.

G.P. booked the vehicle on August 23, 2025, and re-agreed to Terms a second time through a booking-screen checkbox — equally without reading, scrolling, or understanding the

PLAINTIFF'S OPPOSITION TO MTC - 3
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300   Fax +1.206.274.6401

arbitration provision. Turo concedes she never exercised the opt-out, but does not — and cannot — claim she knew the opt-out existed.

### C. Turo's Arbitration Clause

The operative Terms contain the following express delegation clause: "the Parties expressly agree this Agreement to Arbitrate encompasses all disputes or claims pertaining to the validity, enforceability, or scope of this Agreement to Arbitrate and any such dispute or claims will be referred to binding arbitration and will be resolved by the arbitrator and not a court." The Agreement to Arbitrate further purports to cover "any and all disputes, claims, or controversies . . . of the broadest possible meaning . . . regardless of whether they arose or accrued before the Parties entered into this Agreement to Arbitrate."

### D. Procedural Posture

Plaintiff filed this action on January 25, 2026. Turo filed the instant motion on April 14, 2026. Turo's own counsel acknowledged in a recorded settlement conversation Arevalo "has been kicked out" of the platform, Washington "might not be the most friendly venue" for Turo, and "some of these claims might be trickier than others." (Rossi Decl. ¶¶ 4–7.)

### III. LEGAL STANDARD

The FAA places arbitration agreements "upon the same footing as other contracts" — not above them. *Morgan v. Sundance, Inc.,* 596 U.S. 411, 418 (2022). "The FAA's policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules." Id. Under 9 U.S.C. § 2, arbitration agreements are unenforceable on "such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). The EFAA goes further: it categorically voids predispute arbitration agreements at the plaintiff's election where the case "relates to" a sexual harassment or sexual assault dispute. 9 U.S.C. § 402(a). Washington contract principles govern formation. *Reichert v. Rapid Invs., Inc.,* 56 F.4th 1220, 1227 (9th Cir. 2022).

PLAINTIFF'S OPPOSITION TO MTC - 4
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

## IV. ARGUMENT

### A. THE ENDING FORCED ARBITRATION OF SEXUAL ASSAULT AND SEXUAL HARASSMENT ACT CATEGORICALLY BARS ENFORCEMENT OF TURO'S ARBITRATION CLAUSE AS TO THIS ENTIRE ACTION

Congress passed the EFAA in 2022, amending the FAA to provide "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, State, or tribal law and relates to the sexual harassment dispute or the sexual assault dispute." 9 U.S.C. § 402(a). "Sexual harassment dispute" is defined as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, tribal, or State law." 9 U.S.C. § 401(4).

### 1. This Dispute "Relates to" Sexual Harassment Under Applicable Law.

The EFAA's "relates to" standard is intentionally broad. Courts have consistently held a case "relates to" sexual harassment if sexual harassment allegations are a material component of the plaintiff's claims — even if the plaintiff does not plead a standalone sexual harassment cause of action. See *Johnson v. Everyrealm, Inc.,* 657 F. Supp. 3d 535, 559 (S.D.N.Y. 2023); *Turner v. Tesla, Inc.,* 686 F. Supp. 3d 917, 923–26 (N.D. Cal. 2023). The Sixth Circuit has recently held once a case "relates to" such a dispute, the entire lawsuit — not merely the discrete sexual harassment claim — is exempt from arbitration. *See Hodgin v. Intensive Care Consortium,* No. 24-5636 (6th Cir. Feb. 28, 2026).

G.P.'s claims clearly meet this standard. Arevalo's conduct — covertly recording a woman in an enclosed private space and deliberately disseminating those recordings to cause humiliation — constitutes sexual harassment under Washington law (RCW 49.60.030, which broadly defines sex discrimination and harassment) and is actionable voyeurism under Washington's criminal statute (RCW 9A.44.115). The post-dissemination harassment consisted

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

of thousands of sexually explicit and degrading communications targeting her specifically as a woman: explicit sexual commentary about her body, rape-adjacent threats, and misogynistic attacks on her fitness as a mother and driver. This is not incidental to the case — it is the case. The dissemination was targeted, gendered, and sexually humiliating in character.

Turo may be expected to rely on *Tice v. Amazon.com, Inc.*, 845 Fed.Appx. 535 (9th Cir. 2021), for the proposition surreptitious-recording claims can be compelled to arbitration. Tice is readily distinguishable and does not control here. First, Tice was decided in 2021, before Congress enacted the EFAA in March 2022; the Ninth Circuit therefore had no occasion to consider whether a "sexual harassment dispute" under 9 U.S.C. § 401(4) could include recording-based conduct. Second, Tice involved no allegation of gender-based targeting, sexualized dissemination, or post-recording harassment directed at the plaintiff as a woman — the very features transform this case into a sexual harassment dispute under RCW 49.60.030 and the EFAA. Tice is therefore neither controlling nor persuasive on the EFAA question now before this Court.

**2. The EFAA Voids the Entire Arbitration Agreement, Not Just the Harassment Claims.**

Courts that have declined to apply the EFAA have done so only where the alleged sexual harassment predated the statute's March 3, 2022 enactment. *See Hodgin v. Intensive Care Consortium, Inc.*, 666 F. Supp. 3d 1326, 1334 (S.D. Fla. 2023) (EFAA inapplicable where all alleged harassment occurred before enactment); *Castillo v. Altice USA, Inc.,* 698 F. Supp. 3d 652 (S.D.N.Y. 2023) (same). Here, the filming of G.P. without her consent, the dissemination of that recording, and Turo's suppression of her complaint all occurred after March 3, 2022. Hodgin and Castillo are therefore inapposite — and their reasoning confirms that the EFAA applies in full to this case.

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

**3. The Court — Not the Arbitrator — Decides EFAA Applicability.**

Section 402(a) expressly reserves EFAA applicability questions to the Court: the statute operates "notwithstanding . . . any agreement to delegate such determinations to an arbitrator." 9 U.S.C. § 402(b). Turo's delegation clause cannot send the EFAA question to arbitration. The Court must decide it. Plaintiff elects court proceedings under the EFAA.

**B. THE COURT — NOT AN ARBITRATOR — DECIDES THE THRESHOLD QUESTIONS HERE, BECAUSE PLAINTIFF SPECIFICALLY CHALLENGES THE DELEGATION PROVISION AS INDEPENDENTLY UNCONSCIONABLE**

Even if the EFAA did not apply, the Court would still decide the gateway questions because Plaintiff specifically and directly challenges Turo's express delegation clause.

Turo's delegation clause could not be plainer: "the Parties expressly agree that this Agreement to Arbitrate encompasses all disputes or claims pertaining to the validity, enforceability, or scope of this Agreement to Arbitrate and any such dispute or claims will be referred to binding arbitration and will be resolved by the arbitrator and not a court." Under *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 72 (2010), where a party specifically challenges the delegation provision itself, the court — not the arbitrator — determines its enforceability. Under *Bielski v. Coinbase, Inc.,* 87 F.4th 1003, 1009 (9th Cir. 2023), a plaintiff need only "mention" and "specifically relate" her arguments to the delegation provision to trigger judicial review. Plaintiff does so now, with specificity.

**1. The Express Delegation Clause Is Independently Unconscionable.**

Unlike cases in which delegation arises only through incorporation of arbitration-provider rules, Turo's delegation is freestanding and textually explicit. But explicitness does not cure unconscionability. The delegation clause suffers from the same procedural and substantive infirmities as the agreement as a whole — indeed, worse ones:

PLAINTIFF'S OPPOSITION TO MTC - 7
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

Procedurally, the delegation clause appears at pages 22–23 of a 22+-page adhesive clickwrap G.P. never saw, never scrolled, never read, and never knew existed. The mobile sign-up screen contains no notice of the delegation clause, no disclosure the user is waiving the right to judicial determination of the contract's own enforceability, and no opportunity for negotiation. *See Heckman v. Live Nation Entertainment, Inc.,* 120 F.4th 670, 681–87 (9th Cir. 2024) (affirming procedural unconscionability of the adhesive terms infects the delegation clause viewed in context of the agreement as a whole); Bielski, 87 F.4th at 1012 (court may examine delegation clause in context of the entire agreement).

Substantively, the delegation clause creates a "closed loop" in which a Turo-selected AAA arbitrator decides whether the arbitrator has jurisdiction to decide whether the arbitration agreement is enforceable — insulating Turo's chosen forum from judicial scrutiny entirely. This is precisely the structural problem the Ninth Circuit found dispositive in Heckman. 120 F.4th at 685–87. The delegation clause is not separately signed, separately disclosed, separately explained, or in any way called to G.P.'s attention independent of the Terms she never read.

Because the delegation clause is independently unconscionable, the Court proceeds to the remaining gateway questions directly.

**2. In the Alternative: Even If Delegation Clause Reaches Arbitrability, The Court Applies Heckman's "Agreement as a Whole" Standard.**

Even if the delegation clause were deemed facially enforceable, Heckman confirms a court "applying California law can interpret the delegation clause in the context of the agreement as a whole." 120 F.4th at 681 (citing Bielski, 87 F.4th at 1012). Washington courts apply the same holistic approach to unconscionability. *Zuver v. Airtouch Communications, Inc.*, 153 Wn.2d 293, 303, 103 P.3d 753 (2004). Read in full context, the agreement's "infinite" scope clause, retroactive reach, class-action waiver, and cost structure collectively render it unconscionable, and the delegation clause cannot be enforced independent of that analysis.

PLAINTIFF'S OPPOSITION TO MTC - 8
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

**C. TURO'S ARBITRATION CLAUSE IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE UNDER WASHINGTON LAW**

Under Washington law, a contract provision is unconscionable if it exhibits procedural and substantive elements on a sliding scale: "the more substantively oppressive the term, the less procedural unconscionability is required, and vice versa." Zuver, 153 Wn.2d at 303. Both are present in overwhelming measure here.

**1. Procedural Unconscionability.**

**Adhesion**. The Terms were presented on a mobile-phone clickwrap with no opportunity to negotiate. G.P.'s only choices were "accept in entirety" or forgo the rental she urgently needed for work. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019).

**Surprise**. The arbitration, class-waiver, and delegation terms appear on pages 22–23 of a 22+-page document accessible only through a purple hyperlink. G.P. never clicked the hyperlink, never saw the Terms, and never read a word of the arbitration provision. Washington courts routinely find procedural unconscionability where material terms are buried in fine print. *Adler v. Fred Lind Manor,* 153 Wn.2d 331, 347–48, 103 P.3d 773 (2004).

**Urgency.** G.P. signed up under time pressure with a work obligation the next morning and no practical ability to read 22 pages of Terms on a phone. *See Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 54–55, 470 P.3d 486 (2020) (procedural unconscionability heightened where employee has no meaningful alternatives).

**Opt-out illusion.** The opt-out mechanism is buried in the Dispute Resolution section — the very section G.P. never accessed. A consumer who never sees the clause cannot opt out of it. Courts have rejected such opt-outs as cosmetic. *See Kilgore v. KeyBank, N.A.,* 718 F.3d 1052, 1059 n.5 (9th Cir. 2013) (en banc).

**Mobile-phone sign-up flow.** The clause was presented on a small mobile screen in a rapid sign-up flow designed for conversion, not comprehension. *Berman v. Freedom Financial*

PLAINTIFF'S OPPOSITION TO MTC - 9
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

*Network, LLC,* 30 F.4th 849, 856–57 (9th Cir. 2022) (scrutinizing mobile interfaces for reasonable conspicuousness).

### 2. Substantive Unconscionability.

**Forcing a crime victim into confidential arbitration.** Turo's own counsel has admitted Arevalo was "kicked out" of the platform for his conduct with the camera. (Rossi Decl. ¶ 6.) A company that expels a host for criminal voyeurism cannot simultaneously invoke an arbitration clause to force the victim of voyeurism into a confidential proceeding. That is the quintessence of a term "shocking to the conscience." *Adler,* 153 Wn.2d at 344–45.

**Infinite temporal scope.** The clause purports to arbitrate claims "regardless of whether they arose or accrued before the Parties entered into this Agreement to Arbitrate." G.P. signed up on April 16, 2025. The camera incident occurred August 23, 2025. No stretch of contract law permits a clause to retroactively eliminate jury-trial rights for claims not yet accrued at the time of contract formation and arising from independent criminal conduct. Heckman, 120 F.4th at 687–88.

**Third-party sweep.** The clause sweeps in claims against "any other Turo user" — purporting to arbitrate G.P.'s claims against Arevalo himself, an individual over whom she had no contractual relationship and who committed criminal acts against her. This breathtaking expansion has no legitimate contractual basis.

**Jury-trial waiver without informed consent.** Washington requires a "knowing, voluntary, and intelligent" waiver of the constitutional right to jury trial. *Godfrey v. Hartford Cas. Ins. Co.,* 142 Wn.2d 885, 898–99, 16 P.3d 617 (2001). A purple hyperlink on a mobile screen, never clicked, never read, by a consumer in a hurry, is not a knowing waiver.

Because the unconscionable features "pervade" the clause, severance is inappropriate; the entire arbitration agreement is void. Gandee, 176 Wn.2d at 605.

PLAINTIFF'S OPPOSITION TO MTC - 10
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

**D. G.P.'S CLAIMS ARISE FROM CRIMINAL CONDUCT AND AN INDEPENDENT LEGAL DUTY — AND THE NINTH CIRCUIT HAS SPECIFICALLY HELD WIRETAPPING CLAIMS OF THIS CHARACTER CANNOT BE ARBITRATED**

**1. *Jackson v. Amazon.com*: Wiretap Claims Outside Contract Scope Cannot Be Arbitrated.**

The Ninth Circuit has directly answered the question Turo raises here. In *Jackson v. Amazon.com, Inc.,* 65 F.4th 1093 (9th Cir. 2023), the court affirmed the denial of Amazon's motion to compel arbitration of wiretapping claims because those claims arose independently of the employment contract containing the arbitration clause. The court held where the claims "are rooted in" an independent statutory duty — there, the Wiretap Act — and not in the contractual relationship, they fall outside the scope of the arbitration clause even if the clause is broadly worded. Id. at *1–2. This is precisely G.P.'s situation.

G.P.'s claims under the Electronic Communications Privacy Act (18 U.S.C. § 2511), Washington Privacy Act (RCW 9.73.030), and Video Voyeurism Prevention Act (18 U.S.C. § 1801) are rooted in statutory duties existing entirely independent of any Turo Term. Turo would owe G.P. these duties even if no Terms of Service existed. The arbitration clause cannot reach them. *See also Wescott v. Reisner*, 2018 WL 2463614 (N.D. Cal. June 1, 2018) (refusing to compel arbitration of claims by Airbnb guests secretly filmed by host — a direct factual parallel).

**2. The Federal Wiretap Act's Crime-Tort Exception Applies.**

The ECPA's crime-tort exception provides consent is ineffective if "the communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Arevalo intercepted G.P.'s voice communications, expressions, and conduct inside the vehicle for the express purpose of subsequently disseminating them to humiliate her — a tortious act (invasion of privacy, intentional infliction of emotional distress, defamation) and a criminal act

PLAINTIFF'S OPPOSITION TO MTC - 11
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

(RCW 9A.44.115; RCW 9.73.030). Recent judicial authority confirms the crime-tort exception provides a viable ECPA claim where interception is for a tortious purpose. *Semien v. PubMatic Inc., 2026 WL 216333 (N.D. Cal. Jan. 27, 2026)*; *Krzyzek v. OpenX Techs., Inc.* 817 F. Supp. 3d 857 (N.D. Cal. 2026).

### 3. The Airbnb/Turo Hidden-Camera Cases Support Non-Arbitrability.

In *Wescott v. Reisner*, No. 17-cv-06271-EMC, 2018 WL 2463614 (N.D. Cal. June 1, 2018), the court refused to compel arbitration of claims by Airbnb guests who were secretly filmed by a host, holding the claims were not within the reasonable scope of Airbnb's Terms. The factual parallel to this case is direct and compelling: a peer-to-peer platform user filmed inside a private rented space by the platform's host, asserting claims exist independently of the platform's Terms of Service.

### E. PUBLIC POLICY AND THE ANTI-"INFINITE ARBITRATION CLAUSE" DOCTRINE BAR ENFORCEMENT AGAINST A CRIME VICTIM

Turo's clause is the paradigm example of what the Ninth Circuit condemned in Heckman as an "infinite arbitration clause." 120 F.4th at 688. It purports to cover disputes of "the broadest possible meaning," claims "regardless of whether they arose or accrued before the Parties entered into this Agreement," and claims against "any other Turo user" — including, apparently, claims against the person who committed crimes against G.P. using a vehicle he rented through the platform.

As Plaintiff's counsel stated directly to Turo's in-house counsel in March 2026: "I don't think you can refer to arbitration a violation of the Federal Wire[tap] Act. That's a criminal offense." (Rossi Decl. ¶ 5.) Turo's counsel did not dispute this assessment. (Id. ¶ 6.) A clause that attempts to sweep in federal criminal claims, retroactive injuries, and third-party-criminal-conduct claims is not arbitration — it is a liability shield dressed as a contract. The FAA does not protect liability shields.

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

Turo operates a national platform placing consumers alone in vehicles belonging to strangers. Confidential arbitration ensures each new victim is the first — no precedent accumulates, no pattern exposed, no warning reaches the next renter. Courts in Uber sexual-assault cases, Airbnb hidden-camera cases, and Amazon wiretapping cases have consistently refused to allow arbitration clauses to operate as immunity grants for platform-facilitated criminal conduct. This Court should do the same.

**F. PLAINTIFF'S PUBLIC-INJUNCTIVE-RELIEF CLAIMS ARE NOT ARBITRABLE UNDER McGILL AND BLAIR**

To the extent the operative complaint seeks or is amended to seek injunctive relief requiring Turo to (1) enforce its Camera Policy through mandatory host pre-screening, (2) implement a victim-notification protocol, and (3) cease marketing representations inconsistent with its actual screening practices, those claims seek public injunctive relief — relief benefits the general public of future Turo renters, not merely G.P. herself. Under *McGill v. Citibank, N.A.,* 2 Cal. 5th 945 (2017), and *Blair v. Rent-A-Center, Inc.,* 928 F.3d 819, 831 (9th Cir. 2019), predispute waivers of public-injunction rights are unenforceable and the FAA does not preempt that rule. Washington's Consumer Protection Act, RCW 19.86, provides a parallel basis. These claims must remain in court regardless of how the Court rules on the balance of the motion.

**G. IN THE ALTERNATIVE, THE COURT SHOULD ORDER LIMITED FORMATION DISCOVERY AND DENY ANY STAY OF PROCEEDINGS AGAINST THE NON-TURO DEFENDANTS**

If the Court entertains any doubt about G.P.'s assent to the specific clauses at issue, Ninth Circuit law permits — and frequently requires — limited discovery on the circumstances of formation. *Sanford v. MemberWorks, Inc.,* 483 F.3d 956, 962 (9th Cir. 2007). Plaintiff requests leave for a Rule 30(b)(6) deposition on formation circumstances, opt-out rates, hidden-camera complaint frequency, and the circumstances of Arevalo's removal

PLAINTIFF'S OPPOSITION TO MTC - 13
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

Regardless of the disposition as to Turo, the claims against Arevalo, Jimenez, Meta, Reddit, YouTube, Atlanta Black Star, and Inside Edition have no arbitration nexus whatsoever. No stay should issue as to those defendants. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20 n.23 (1983).

**V. CONCLUSION**

Turo seeks to convert a purple hyperlink on a mobile sign-up screen — clicked by a nurse in a hurry who needed to get to work — into a prospective waiver of her constitutional right to a jury trial for claims arising from her own covert filming, the deliberate dissemination of film to destroy her life, and the resulting harassment followed. The FAA does not authorize this.

The EFAA categorically bars enforcement; Zuver, Gandee, and Heckman forbid enforcement of this unconscionable and infinite clause; Jackson places G.P.'s wiretapping claims outside its scope; and McGill/Blair preserve her public-injunction claims.

Turo's own in-house counsel acknowledged in a recorded call Arevalo "has been kicked out" of the platform for his conduct, Washington "might not be the most friendly venue," and some of these claims might be trickier than others." (Rossi Decl. ¶¶ 4–8.)

For the foregoing reasons, the Court should:

1. **DENY** Turo's Motion to Compel Arbitration in its entirety;

2. **DENY** Turo's request for a stay;

3. **GRANT** leave for limited formation discovery and such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 7th day of May, 2026.

I certify this memorandum contains 4,200 words, in compliance with the Local Civil Rules.

PLAINTIFF'S OPPOSITION TO MTC - 14
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401

**ROSSI & CO., P.C.**


By: /s/ Ronald G. Rossi

Ronald G. Rossi, WSBA 54720, CBA 10366

PLAINTIFF'S OPPOSITION TO MTC - 15
(2:26-cv-00284-KKE)

**ROSSI & CO., P.C.**
ATTORNEYS AT LAW
616 33rd Ave NW
Gig Harbor, Washington 98101
Tel +1.303.222.0300    Fax +1.206.274.6401