The Honorable Kymberly K. Evanson

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN THE MATTER OF: G.P, an individual,

Plaintiff,

v.

JOSE HERNANDEZ AREVALO, an individual;
MARICELA JIMENEZ, an individual; TURO
INC., a Delaware corporation; META
PLATFORMS, INC., a Delaware corporation;
REDDIT, INC., a Delaware corporation;
YOUTUBE, LLC, a Delaware limited liability
company; ATLANTA BLACK STAR, INC., a
Georgia corporation; INSIDE EDITION, INC., a
New York corporation; and JOHN DOES 1-10,
individuals or entities unknown,

Defendants.

Case No. 2:26-cv-00284-KKE

**DEFENDANT TURO INC.'S SECOND
MOTION TO COMPEL ARBITRATION
AND STAY ACTION**

**NOTE ON MOTION CALENDAR: JUNE
30, 2026**

Defendant Turo Inc. ("Turo") moves the Court under the Federal Arbitration Act, 9

U.S.C. § 1, *et seq.* to enter an order compelling arbitration of plaintiff G.P.'s ("G.P.") claims

against Turo and staying this action as to Turo pending arbitration.

## INTRODUCTION

This Court should compel arbitration of G.P.'s claims against Turo because G.P. agreed

to arbitration when she created an account on Turo's platform and reaffirmed that agreement

when she made the car-sharing reservation at issue in this case. G.P. filed this action against

Turo and several other defendants asserting claims arising out of or relating to her use of Turo's

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL
ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-
00284-KKE) - 1

online peer-to-peer car-sharing platform, asserting that she was recorded by an interior-facing dashcam that she allegedly did not know existed while using the car she obtained from Turo's platform. By registering for and using her account with Turo to reserve the car, G.P. agreed to arbitrate any and all disputes between G.P. and Turo relating to her use of Turo's services, *i.e.*, the exact conduct at issue in this lawsuit. Accordingly, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), this Court should grant this motion and compel G.P.'s claims against Turo to arbitration.[1]

Notably, this is Turo's second motion to compel arbitration in this case. Turo previously moved to compel arbitration as to G.P.'s claims against Turo in her initial complaint, which asserted a single claim for negligence. (*See* Dkt. # 28.) Before Turo's reply brief was due on that prior motion, G.P. filed her Amended Complaint (Dkt. # 59)[2] that added two additional claims against Turo (for intrusion upon seclusion and vicarious liability) and purported to cure the defects in her allegations. The Amended Complaint does not change the outcome of Turo's motion to compel arbitration because G.P. still asserts claims against Turo that fall directly within the arbitration clause. The only significant change in the Amended Complaint is that G.P. improperly quotes and relies upon alleged statements made by Turo's in-house counsel relating to a confidential settlement discussion between the parties for which Turo is filing a separate motion to strike.

## BACKGROUND

**I.     Turo's users must agree to Turo's Terms of Service, which contain an arbitration provision, prior to booking a car.**

Turo is a technology company that offers an online peer-to-peer car sharing service that connects vehicle owners (known as "Hosts") with drivers (known as "Guests") seeking to book

---

[1] Turo expressly reserves and does not waive its arguments and defenses to G.P.'s allegations that it intends to raise in the arbitration.

[2] The parties conferred and agreed that the Amended Complaint mooted Turo's prior motion to compel arbitration, so Turo is refiling its motion in accordance with Fed. R. Civ. P. 15(a)(3) to address the claims against Turo in the Amended Complaint.

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 2

those vehicles. (Decl. of Todd Armstrong, Dkt. # 29 ¶ 2.) Hosts and Guests (who are collectively referred to as Turo's "Users") must create a Turo account through Turo's website or app prior to using Turo's service. (*Id.* ¶ 3.) To create an account, a user must first agree to Turo's Terms of Service ("Terms") by affirmatively clicking either a circle or box to indicate they "agree to the terms of service and privacy policy." (*Id.* ¶ 5.) It is impossible for a user to create a Turo account without affirmatively indicating their consent to the Terms. (*Id.* ¶ 8.)

Turo's Terms contain a mandatory arbitration provision covering claims between or among any Guest, Host, and Turo. (Dkt. # 29-1 at pp. 22–23; Dkt. # 29-2 at pp. 22–23.) Specifically, Turo's terms provide:

> **Dispute resolution**
>
> * * *
>
> PLEASE READ THIS SECTION CAREFULLY. IT CONTAINS A MANDATORY ARBITRATION PROVISION AND THEREFORE AFFECTS YOUR RIGHTS AND GOVERNS HOW CLAIMS YOU AND TURO HAVE AGAINST EACH OTHER ARE RESOLVED.
>
> **Subject to applicable law, the Parties agree that any disputes or claims between us relating in any way to, or arising out of, this or previous versions of these Terms, your use of or access to the Services, or any breach, enforcement, or termination of the Agreement will be resolved in accordance with the provisions set forth in this Dispute resolution for hosts and guests residing in the United States section.**
>
> * * *
>
> **Agreement to Arbitrate.** The Parties each agree that any and all disputes, claims, or controversies that have arisen or may arise at any time between you and Turo (including its respective subsidiaries, employees, officers, directors, agents, third-party insurance brokers or products, and third-party claims administrators) and/or any other Turo user will be resolved by binding arbitration according to the procedure set forth below. For the purpose of this Agreement to Arbitrate, "disputes," "claims," and "controversies" shall have the broadest possible meaning that will be enforced and includes, any and all disputes and/or claims that arise out of or in any way relate to your relationship with Turo,

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 3

including but not limited to: (1) your use of the Services; (2) the Agreement, these Terms and/or this Agreement to Arbitrate, including the interpretation, validity, enforceability, or scope of this Agreement to Arbitrate, or (3) your use of, or access to the Services, and anything sold, offered, or purchased through the Services (such as booking, listing, or sharing a vehicle). Through this Agreement to Arbitrate, and subject to the below exceptions, the Parties intend to arbitrate all disputes or claims regardless of whether they are based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory and regardless of whether they arose or accrued before the Parties entered into this Agreement to Arbitrate. For avoidance of doubt, the Parties expressly agree that this Agreement to Arbitrate encompasses all disputes or claims pertaining to the validity, enforceability, or scope of this Agreement to Arbitrate and any such dispute or claims will be referred to binding arbitration and will be resolved by the arbitrator and not a court.

(Dkt. # 29-2 at pp. 22–23.) The only exception to the mandatory arbitration provision is for claims that can be brought in small claims court, injunctive relief arising from actual or threatened misappropriation of intellectual property rights, or claims that cannot be arbitrated under statute or public policy. (*Id.* at p. 23.) The parties further agreed that the "Agreement to Arbitrate" in the Terms shall be "governed by the Federal Arbitration Act." (*Id.* at p. 22.)

## II.  G.P. accepted Turo's Terms.

G.P. created her Turo account on April 16, 2025. (Dkt. # 29 ¶ 4.) Turo's operative Terms at that time were the version last revised on March 19, 2025. (*Id.* ¶ 15.) As described above, G.P. expressly agreed to Turo's Terms to create her account. (*Id.* ¶ 8.)

G.P. alleges that on August 23, 2025, she used Turo's online platform to book a one-day rental of a 2013 Nissan Leaf electric vehicle from Jose Hernandez Arevalo ("Arevalo"), the Host, in Bothell, Washington. (Am. Compl., Dkt. # 59, ¶ IV.A.1; *see also* Dkt. # 29 ¶ 12.) Turo's operative Terms, at that time, were the version last revised on June 2, 2025. (Dkt. # 29 ¶ 16.)[3]

---

[3] The Agreement to Arbitrate in the version of Turo's Terms last revised on June 2, 2025 when plaintiff booked the alleged vehicle at issue is identical to the Agreement to Arbitrate in the version of Turo's Terms last revised on March 19, 2025 when plaintiff created her account. (*See* Dkt. # 29-1 at pp. 22–23; Dkt. # 29-2 at pp. 22–23.)

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 4

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

G.P. alleges that as part of that transaction she went through Turo's "online booking process" which is Turo's "standard booking flow." (Dkt. # 59 ¶ IV.A.2.) As such, when G.P. booked the vehicle from Arevalo, she again agreed to Turo's Terms.

**III.     G.P. filed suit against Turo relating to her use of its platform and then amends her complaint following Turo's motion to compel arbitration.**

On January 25, 2026, G.P. filed her initial complaint against Turo and others. (*See* Compl. Dkt. # 1.) In her complaint, G.P. brought one claim against Turo for negligence relating to its alleged failure to enforce its policies and Terms relating to dashcams. (*See, e.g.*, *id.* ¶¶ XX.)

On April 14, 2026, Turo filed its first motion to compel arbitration, seeking to compel G.P. to arbitrate her negligence claim against Turo as required under the Terms. (*See* Dkt. # 28.) G.P. filed her opposition to Turo's motion to compel arbitration (which was untimely) on May 7, 2026. (*See* Dkt. # 44.) Before Turo could file its reply, however, G.P. filed her Amended Complaint on May 19, 2026. (Dkt. # 59.)

**III.     G.P.'s Amended Complaint still alleges claims within the scope of her arbitration agreement with Turo.**

G.P.'s Amended Complaint does not change the outcome of Turo's motion to compel arbitration. G.P. again alleges, among other things, that she booked the Nissan Leaf on Turo's online platform and was never notified that the vehicle contained a recording device. (*Id.* ¶ IV.A.2.) G.P. further alleges that unbeknownst to her, the vehicle included an interior and exterior-facing dashcam that recorded both her inside the car and the road ahead. (*Id.* ¶ IV.A.4.) She alleges that under Turo's "published policies," *i.e.*, the Terms, any Host (including Arevalo) must disclose the recording device to the guest and obtain affirmative, written consent before the device is activated during the rental. (*Id.* ¶ IV.A.6.) G.P. alleges that Arevalo violated Turo's policy by failing to disclose and obtain consent for the use of the recording device, and Turo "failed to enforce its own [privacy] policy" with respect to the disclosure of the recording device. (*Id.* ¶ IV.A.5–6.)

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 5

G.P. now maintains three claims against Turo. She brings a negligence claim, based on the alleged "legal duty to exercise reasonable care for her privacy, safety and well-being during the course of the rental transaction," and claims that Turo breached that duty by failing to enforce its own policy for obtaining consent for use of the recording device and failing to monitor its Hosts for compliance with that policy. (*Id.* at pp. 28.)

She also brings an intrusion upon seclusion claim against Turo, alleging that Turo's policies did not "implement safeguards" that would have reasonably prevented the intrusion of the recording. (*Id.* at p. 22.)

And finally, G.P. brings a standalone "vicarious liability" claim against Turo, alleging that Turo is vicariously liable for the actions of defendant Arevalo (whom she alleges subsequently posted a recording of G.P. texting while driving and then crashing Arevalo's car) because Turo "held out Arevalo as a vetted host on its platform, exercised control or the right to control over the terms governing his conduct, and enabled and benefitted from the rental transaction in which the tortious conduct occurred." (*Id.* at p. 29.) G.P. seeks damages against Turo in the form of compensation for damages and injunctive relief requiring Turo to implement safeguards and alter its policies related to interior recording devices. (*Id.* at p. 33.)

## LEGAL STANDARDS

The Terms provide, and G.P. agreed, that the parties' arbitration agreement is governed by the FAA. (*See* Dkt. # 29 ¶ 8; Dkt. # 29-1 at p. 22; Dkt. # 29-2 at pp. 22–23.) *See also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277–82 (1995) (noting that FAA governs agreements to arbitrate with national companies engaged in interstate commerce).

The FAA provides that an agreement to submit disputes to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The FAA was enacted "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate[,]" and to place such arbitration agreements "upon the same

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 6

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

footing as other contracts[.]" *Id.* at 219–20 (cleaned up); *see also In re Grice*, 974 F.3d 950, 953 (9th Cir. 2020) ("The [FAA] places arbitration agreements on an equal footing with other contracts, requiring courts to enforce them according to their terms.").

District courts applying the FAA have accordingly developed a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). In the Ninth Circuit, a court's review in context of a request to compel arbitration under the FAA is "limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). If so, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218. Finally, the FAA requires that when a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, the district court must stay the proceeding. *See Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) (discussing 9 U.S.C. § 3).

## ARGUMENT

**I.     The Court should compel arbitration pursuant to the parties' agreement.**

The Court should compel G.P. to arbitrate her claims as she agreed to do. The Terms that G.P. agreed to when she created an account with Turo and booked the trip at issue establish a valid and binding agreement to arbitrate, which covers G.P.'s claims against Turo. This case is thus not properly before this Court, and the FAA requires an order compelling arbitration. *See Chiron*, 207 F.3d at 1130.

**A.     G.P. entered into a valid agreement to arbitrate her dispute with Turo.**

G.P. affirmatively agreed to arbitrate when she registered an account with Turo, and when she used that account to reserve a vehicle on Turo's online platform. To determine the validity of an agreement to arbitrate, the Court should look to "general state-law principles of

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 7

contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *MediVas, LLC v. Marubeni Corp.*, 592 F. App'x 642, 643 (9th Cir. 2015) (unpublished). Under Washington law, "[f]or a contract to exist there must be mutual assent to its essential terms." *Weiss v. Lonnquist*, 153 Wn. App. 502, 511 (2009) (quoting *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 765 (2007)); *see also Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177–78 (2004). "Washington follows the objective manifestation theory of contract, which 'lays stress on the outward manifestation of assent made by each party to the other.'" *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (quoting *City of Everett v. Sumstad's Est.*, 95 Wn.2d 853, 855 (1981)).

These principles apply equally to online "clickwrap" or "sign-in wrap" agreements such as G.P.'s agreement to the Terms here. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (noting that "traditional principles of contract still apply" to online commerce under Washington law). "Clickwrap agreements require users to affirmatively assent to the terms of use before they can access the website and its services." *Id.* at 1220. "In the context of online agreements, the existence of mutual assent turns on whether the consumer had reasonable notice of the terms of [the] agreement." *Id.* at 1219. Courts in this district accordingly regularly enforce "clickwrap" or "sign-in wrap" agreements, where the terms of service are reasonably conspicuous and where the user affirmatively clicks to manifest assent. *See, e.g.*, *Oatway v. Experian Info. Sols., Inc.*, No. 2:24-CV-00523-LK, 2024 WL 4879822, at *6 (W.D. Wash. Nov. 25, 2024) (enforcing arbitration agreement where website users clicked a button to manifest assent to terms of service, which were disclosed on the same webpage in a blue-highlighted hyperlink).

The same essential facts and the same result apply here. G.P. affirmatively clicked and agreed to the terms of the Terms—not just once, but repeatedly—entering into a valid contractual agreement between herself and Turo. First, when she registered her account with

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 8

Turo, G.P. affirmatively checked a box next to the phrase "I agree to the terms of service and privacy policy." (Dkt. # 29 ¶¶ 3, 5–8.) That action manifested her assent to Turo's Terms and the arbitration agreement within those terms. (*See id.* ¶¶ 6–8.) The "I agree" button is located next to a purple-highlighted hyperlink to the Terms and privacy policy. (*Id.*)

(*Id.* at p. 6.)

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 9

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

Second, when G.P. reserved the Nissan Leaf at issue in this lawsuit on August 23, 2025, she again agreed to the Terms by affirmatively checking a box next to the phrase, "I agree to pay the total shown and to the Turo terms of service, cancellation policy, and I acknowledge the privacy policy" that is located directly above the "Book trip" button. (*See* Dkt. # 29 ¶¶ 13–14.) Like the account creation flow, the check-out flow is immediately next to a conspicuous, purple-highlighted hyperlink directing G.P. to the Terms (and the cancellation and privacy policies).

(*Id.* ¶ 14.)

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 10

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

In other words, G.P.'s own allegation that she reserved the vehicle through Turo's website necessarily means that she affirmatively checked a box stating "I agree" to Turo's Terms, including a binding arbitration provision. *See also Oatway*, 2024 WL 4879822, at *6 (user agreed to terms of use, including arbitration provision, by clicking button indicating consent). That result is consistent with the decisions of several courts that have enforced Turo's Terms based on similar facts. *See, e.g.*, *Crossett v. Turo Inc.*, No. 1:24-CV-00140-DBB-JCB, 2025 WL 2548613, at *1 (D. Utah July 30, 2025), report and recommendation adopted, No. 1:24-CV-140-DBB-JCB, 2025 WL 2463219 (D. Utah Aug. 27, 2025) (concluding that Terms were enforceable and granting motion to compel arbitration); *Nutall v. City of Ontario,* No. EDCV 25-539 JGB (EX), 2025 WL 2377090, at *2–3 (C.D. Cal. June 26, 2025) (granting motion to compel arbitration based on Terms and rejecting unconscionability arguments). Similarly here, G.P. agreed to the Terms by affirmatively clicking to demonstrate her agreement and is bound by her agreement to arbitrate her dispute with Turo.

## II.    G.P.'s claims against Turo fall within the scope of her broad agreement to arbitrate.

Each of G.P.'s three claims against Turo falls squarely within the scope of her agreement to arbitrate with Turo because each arises from the rental transaction that forms the basis of her complaint. Accordingly, each should be arbitrated under the binding arbitration agreement.

### A.    G.P.'s negligence claim against Turo falls within the scope of her agreement to arbitrate.

G.P.'s negligence claim is based on her use of Turo's online platform and Turo's alleged breach of its obligations under its Terms and is therefore subject to her broad agreement to arbitrate any and all disputes with Turo. Courts must refer claims to arbitration "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 F. App'x 740, 743 (9th Cir. 2012) (unpublished). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 11

473 U.S. 614, 626 (1985). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Here, G.P.'s negligence claim against Turo directly falls within the broad scope of "any and all disputes, claims, or controversies that have arisen or may arise at any time between you and Turo." (*See* Dkt. # 29-1 at p. 22; Dkt. # 29-2 at pp. 22–23.) In addition, G.P.'s claim directly relates to G.P.'s use of Turo's services and Turo's alleged breach of its Terms, which are some of the specified examples of covered claims in the arbitration provision. (*Id.*) As such, there should be no dispute that G.P.'s negligence claim falls within the scope of the arbitration agreement.

**B.  G.P.'s intrusion upon seclusion claim against Turo falls within the scope of her agreement to arbitrate.**

The same is true for G.P.'s intrusion upon seclusion claim against Turo; it relates to G.P.'s use of Turo's services and Turo's alleged breach of its Terms. G.P.'s intrusion upon seclusion claim directly references Turo's Terms, alleging that Turo is "liable for intrusion upon seclusion as a result of its failure to enforce its own disclosure policies and its failure to implement safeguards that would have prevented the intrusion." (Dkt. # 59 at p. 22.) That is because the core theory of her intrusion upon seclusion claim is that Turo's Terms should have, but allegedly did not, contain adequate safeguards to protect her as a User from a Host who failed to adequately disclose the existence of a front-facing camera when she rented the car at issue.

Those allegations clearly relate to G.P.'s use of Turo's peer-to-peer car renting services and are asserted against Turo; thus, her intrusion upon seclusion claim falls within the scope of her agreement to arbitrate. Courts compel arbitration of privacy claims where those claims, as here, are within the scope of an arbitration provision. *See Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d. 1172, 1183–84, 1207 (W.D. Wash. 2024) (granting motion to compel privacy claims

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 12

related to alleged interception of browsing data); *Garcia v. Dell, Inc.*, 905 F. Supp. 2d. 1174, 1179–80 (S.D. Cal. 2012) (granting motion to compel arbitration of plaintiff's common-law and statutory privacy claims based on alleged recording of telephone call because claims "arise out of" contract containing arbitration clause). Accordingly, G.P.'s intrusion upon seclusion claim is subject to arbitration under Turo's Terms.

### C.    G.P.'s claim for "vicarious liability" is also within the scope of her arbitration agreement and does not change the analysis regarding arbitrability.

G.P.'s standalone claim of "vicarious liability" also does not save her claims against Turo from being compelled to arbitration. In the first instance, Turo denies that it is vicariously liable for the conduct of any other defendant and denies that "vicarious liability" is even a standalone claim. *See, e.g.*, *Banks v. Soc'y of St. Vincent De Paul*, 143 F. Supp. 3d 1097, 1104 (W.D. Wash. 2015) (granting summary judgment because "[v]icarious liability is not a cause of action; rather, it is a legal theory that 'imposes liability on an employer for the torts of an employee who is acting on the employer's behalf.'").

But the Court need not even reach those decisions at this stage; even if G.P. alleges that Turo is vicariously liable for the acts of Arevalo, that does not change the arbitration analysis. Under the Terms, G.P. agreed to arbitrate all "disputes, claims, or controversies" with Turo, so she is bound by the arbitration agreement even if her theory of vicarious liability relates to conduct by another defendant. Courts routinely compel arbitration of similar vicarious liability theories under the FAA, including when a rider alleges that a rideshare company is vicariously liable for the actions of a driver. *See, e.g.*, *Spain v. Johnson*, 711 F. Supp. 3d 1260, 1266 (D. Colo. 2024) (granting motion to compel arbitration of claim based on vicarious liability as within the scope of arbitration clause because "[t]his is clearly a 'dispute' arising out of [the plaintiff's] use of Lyft's platform and rideshare services, and vicarious liability is a state common law claim."); *Christian v. Uber Tech's., Inc.*, 775 F. Supp. 3d 272, 281 (D.D.C. 2025) (compelling arbitration of plaintiff-rider's vicarious liability claim against Uber because Uber's Terms of Use

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 13

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

govern the relationship with riders and the dispute at issue "is exactly the type of lawsuit that a reasonable Rider would expect to have to arbitrate after accepting the Terms of Use"). The same logic applies here, and G.P.'s claims should similarly be sent to arbitration.

**III.    The Court should stay this action pending arbitration.**

The FAA provides that a district court shall stay an action when presented with an enforceable arbitration agreement. 9 U.S.C. § 3. The Supreme Court has recently made clear that a stay under the FAA is mandatory when a party requests one. *See Spizzirri*, 601 U.S. at 478. Because this action is subject to arbitration as explained above, the Court should also enter a stay pending arbitration.

**CONCLUSION**

For the foregoing reasons, the Court should grant Turo's motion, compel G.P. to arbitrate her claims against Turo, and stay her claims against Turo pending the outcome of the arbitration.

Dated this 2nd day of June, 2026.

I certify that this memorandum contains 4,088 words, in compliance with the Local Civil Rules.

HOLLAND & KNIGHT LLP


By: *s/Kristin Asai*
Kristin Asai, WSBA No. 49511
E-mail: kristin.asai@hklaw.com
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300
Fax: 503.241.8014

*Of Attorneys for Defendant Turo Inc.*

DEFENDANT TURO INC.'S SECOND MOTION TO COMPEL ARBITRATION AND STAY ACTION (CASE NO. 2:26-CV-00284-KKE) - 14