UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

G.P.,

Plaintiff(s),

v.

JOSE HERNANDEZ AREVALO,

Defendant(s).

CASE NO. C26-284-KKE

ORDER COMPELLING ARBITRATION AND STAYING CASE

This matter comes before the Court on Defendant Turo, Inc.'s motion to compel arbitration (Dkt. No. 65) and Defendant Jose Arevalo's motion to dismiss or, in the alternative, compel arbitration (Dkt. No. 78). Because Plaintiff G.P.[1] entered into a binding and enforceable arbitration agreement that covers her claims against both Defendants, the Court will grant Turo's motion, grant Arevalo's request (in the alternative) to compel arbitration, and stay this case as to the remaining Defendants.

## I. BACKGROUND

Plaintiff G.P. sues several Defendants over the filming and dissemination of a video, taken from the dashboard of a rental car, that records her texting while driving the vehicle off the road and into a mailbox. Dkt. No. 59 at 12–18. G.P. had rented the vehicle from Defendant Jose Arevalo using the peer-to-peer vehicle sharing platform Turo, which is operated by Defendant

[1] The Court granted G.P. permission to proceed via a pseudonym. Dkt. Nos. 11, 87.

Turo, Inc. *Id.* at 6–7, 10. She alleges that Arevalo disclosed the existence of the camera before her trip but did so inadequately. *Id.* at 10–11. After the accident, "[d]ue to a combination of shock, disorientation, and a previous traumatic automobile accident[,]" G.P. "formed the mistaken belief that perhaps another vehicle had forced her off the road" and so recounted this version of events to Arevalo. *Id.* at 12–13. When Arevalo reviewed the recording and saw that no other vehicle had been involved, he posted the video to Facebook, where it spread to other social media platforms, including Reddit, and was reported on by media outlets. *Id.* at 13–17.

G.P. filed this lawsuit and then filed an amended complaint. Dkt. Nos. 1, 59. She sues not only Arevalo and Turo, but also three social media companies (Meta Platforms, Inc.; Reddit, Inc.; and YouTube, LLC), two media outlets (Atlanta Black Star, Inc. and Inside Edition, Inc.), and the owner of the rental vehicle (Maricela Jimenez). Dkt. No. 59 at 6–10. Her amended complaint asserts of bevy of claims for intrusion upon seclusion, public disclosure of private facts, defamation and false light, intentional infliction of emotional distress, negligence, negligent entrustment, and violations of the Federal Wiretap Act (18 U.S.C. §§ 2511, 2520) and the Washington Privacy Act (WASH. REV. CODE §§ 9.73.030, .060), as well as a stand-alone claim for "vicarious liability." Dkt. No. 59 at 20–32.

Turo moved to compel arbitration under its user agreement (Dkt. No. 65) and, at the same time, moved to strike portions of the amended complaint that Turo claimed reflected confidential settlement discussions that G.P.'s counsel had recorded without Turo's knowledge or consent (Dkt. No. 66). G.P. missed the deadline to respond to the motion to strike, and the parties stipulated to new deadlines for both motions. Dkt. No. 83. G.P. then missed the new deadline to respond to the motion to compel arbitration, filed her response brief late, and concurrently moved for an extension of the deadline that had already passed. Dkt. Nos. 95, 96. G.P.'s response contains erroneous citations that Turo contends—and G.P. does not dispute—are likely the result of AI

fabrication. *See* Dkt. No. 103 at 2 (acknowledging citation to nonexistent case, "*Kader v. S. Fla. Maint., Inc.*, No. 22-cv-23224, 2023 WL 3578798 (S.D. Fla. May 22, 2023)," and replacing it with citation to California Court of Appeal decision); *see also* Dkt. No. 102 at 12.

Arevalo moved to dismiss the amended complaint or, in the alternative, compel arbitration pursuant to the same user agreement on which Turo's motion relies. Dkt. No. 78. G.P. also missed the deadline to respond to that motion. After it passed, her counsel filed a motion for relief from the deadline (and several other deadlines) on the ground that he had relocated to Italy and had experienced an interruption in internet service at his apartment there. Dkt. No. 92. After the Court directed the relevant Defendants to respond, Arevalo and G.P. stipulated to new deadlines (Dkt. No. 98), and G.P. filed a response by the agreed upon deadline (Dkt. No. 109).

The Court finds oral argument unnecessary. Both motions are now ripe for consideration.

## II. ANALYSIS

As a preliminary matter, G.P.'s opposition to Turo's motion to compel arbitration is not properly before the Court as she missed the filing deadline and has not shown good cause for an extension. *See* FED. R. CIV. P. 6(b)(1)(B) (requiring a party seeking relief from an already expired deadline to show "excusable neglect"). G.P. contends that missing the deadline was excusable because her amended complaint "added substantial new federal claims" that "required independent legal research and analysis." Dkt. No. 95 at 2. That is not a sufficient reason for failing to request an extension *before* the deadline passed. By G.P.'s own telling, the additional research required was occasioned by her own election to file an amended complaint asserting new claims. And she already received one extension (after missing the deadline to respond to the motion strike) to research and prepare her brief. G.P.'s decision to file an amended complaint over a month before

her deadline to oppose Turo's motion does not support excusable neglect. [2]

Although granting Turo's motion as unopposed is warranted on this basis alone, the Court prefers to resolve matters on their merits and thus proceeds to analyze Turo's motion, as well as Arevalo's motion (in the alternative) to compel arbitration, under the applicable legal standard.

**A. Legal Standard for a Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. Accordingly, courts place arbitration agreements on "equal footing with other contracts," and recognize "a federal policy in favor of arbitration[.]" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

If the existence of an arbitration agreement is "in issue," the FAA provides that "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. In applying this procedure, courts rely on the summary judgment standard of Federal Rule of Civil Procedure 56. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Thus, a court will only "decide as a matter of law

[2] Counsel's citation to apparently fabricated authorities and repeated and unexcused missing of deadlines falls well below the standard of professional responsibility required by this Court. Given the procedural posture of this case, the Court will not at this time order sanctions, although there is ample authority on which to do so. *See e.g.*, *Ledoux v. Outliers, Inc.,* No. 3:24-CV-05808-TMC, 2026 WL 2137370, at *5 (W.D. Wash. July 24, 2026) ("Sanctions for fabricated citations may include '(1) monetary sanctions, (2) striking the filing containing erroneous citations, (3) requiring written notification to the client, (4) requiring written notification to judges incorrectly identified as having authored nonexistent cases, and (5) referring attorneys to the appropriate disciplinary body for disciplinary proceedings.'") (collecting cases); *Springer v. Cnty. of Placer*, No. 02:06-CV-0310GEBDAD, 2006 WL 1409560, at *1 (E.D. Cal. May 19, 2006) ("Plaintiffs and their counsel are warned that sanctions jurisprudence can be invoked when a filing deadline is missed.").

that the parties did or did not enter into" an arbitration agreement if "there is no genuine issue of fact concerning the formation of the agreement[.]" *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). The party denying the existence of an agreement receives "the benefit of all reasonable doubts and inferences that may arise." *Id.* (quoting *Par–Knit Mills*, 636 F.2d at 54); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (holding that "presumption in favor of arbitrability" applies only where the *scope* of an agreement to arbitrate is ambiguous: "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply.").

### B. G.P. Agreed to Arbitrate Her Claims Against Turo and Arevalo.

To rent a vehicle through Turo, users agree to Turo's Terms of Service ("Terms") twice: first, when they create an account; and second, when they reserve a vehicle. Dkt. No. 29 ¶¶ 3, 5–11. At both stages, before the user can either create an account or reserve a vehicle, the user must click on a circle or box labeled "I agree to the terms of service and privacy policy" or "I agree to pay the total shown and to the Turo terms of service, cancellation policy, and I acknowledge the privacy policy[.]" *Id.* ¶¶ 5–6, 13–14. In both cases, the words "terms of service" are displayed in purple and hyperlink to the complete Terms. *Id.* Those Terms provide, in relevant part:

> **Dispute resolution**
>
> ….
>
> PLEASE READ THIS SECTION CAREFULLY. IT CONTAINS A MANDATORY ARBITRATION PROVISION AND THEREFORE AFFECTS YOUR RIGHTS AND GOVERNS HOW CLAIMS YOU AND TURO HAVE AGAINST EACH OTHER ARE RESOLVED.
>
> **Subject to applicable law, the Parties agree that any disputes or claims between us relating in any way to, or arising out of, this or previous versions of these Terms, your use of or access to the Services, or any breach, enforcement, or termination of the Agreement will be resolved in accordance**

> **with the provisions set forth in this Dispute resolution for hosts and guests residing in the United States section.**
>
> ….
>
> Agreement to Arbitrate. The Parties each agree that any and all disputes, claims, or controversies that have arisen or may arise at any time between you and Turo (including its respective subsidiaries, employees, officers, directors, agents, third-party insurance brokers or products, and third-party claims administrators) and/or any other Turo user will be resolved by binding arbitration according to the procedure set forth below. For the purpose of this Agreement to Arbitrate, "disputes," "claims," and "controversies" shall have the broadest possible meaning that will be enforced and includes, any and all disputes and/or claims that arise out of or in any way relate to your relationship with Turo, including but not limited to: (1) your use of the Services; (2) the Agreement, these Terms and/or this Agreement to Arbitrate, including the interpretation, validity, enforceability, or scope of this Agreement to Arbitrate, or (3) your use of, or access to the Services, and anything sold, offered, or purchased through the Services (such as booking, listing, or sharing a vehicle). Through this Agreement to Arbitrate, and subject to the below exceptions, the Parties intend to arbitrate all disputes or claims regardless of whether they are based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory and regardless of whether they arose or accrued before the Parties entered into this Agreement to Arbitrate. For avoidance of doubt, the Parties expressly agree that this Agreement to Arbitrate encompasses all disputes or claims pertaining to the validity, enforceability, or scope of this Agreement to Arbitrate and any such dispute or claims will be referred to binding arbitration and will be resolved by the arbitrator and not a court.

Dkt. No. 29-1 at 21–22. In sum, the Terms require arbitration of any dispute between a Turo user (here, G.P.) and either Turo itself or "any other Turo user" (such as Arevalo) "in any way relate[d]" to the user's use of Turo. *Id.*

G.P. concedes that she checked the box agreeing to the Terms both when she created a Turo account (or when her boyfriend did so on her behalf) and when she booked the trip with Arevalo's vehicle. Dkt. No. 97 ¶¶ 3–4, 10, 12. While she claims she was "in a hurry" and did not read the Terms (*id.* ¶¶ 3, 5–9, 12), that does not prevent her from forming a binding agreement. *See, e.g.*, *Gaines v. Jordan*, 393 P.2d 629, 630 (Wash. 1964) ("It is the general rule that one who is able to read, and fails to read a contract which [s]he signs, cannot be heard to deny that [s]he has

executed the contract."). Contrary to G.P.'s arguments, the Court finds that Turo's purple and hyperlinked Terms—located directly adjacent to the "sign up" or "book trip" buttons—are sufficiently conspicuous, and that the arbitration clause is adequately disclosed within those terms. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("[I]t is permissible to disclose terms and conditions through a hyperlink" if the "hyperlink is … readily apparent."). Accordingly, the Court finds that G.P. manifested assent to the Terms and thus agreed to be bound by the arbitration clause.

While G.P. contends otherwise, the arbitration clause is not unconscionable—procedurally or substantively—simply because G.P. was not able to negotiate it, because its opt-out clause appears on page 22, or because it delegates arbitrability to the arbitrator, contains a class action waiver, or adopts arbitration rules from the American Arbitration Association ("AAA"). *See Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 760 (Wash. 2004) ("[T]he fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable." (citing cases)); *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1015 (9th Cir. 2023) (delegation provision was not unconscionable); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (class action waiver was not unconscionable). Turo's Terms were prominently disclosed to G.P., and she had the opportunity to review them and choose whether or not she wished to accept them. G.P. cites no authority, and the Court is aware of none, suggesting that the AAA's arbitration rules are substantively unconscionable. The Terms are not unconscionable.

G.P. also argues that three statutes bar arbitration of her claims: the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), the Federal Wiretap Act, and the Washington Privacy Act. The Court disagrees. The EFAA does not apply because this case does not involve a dispute over sexual harassment or sexual assault, as those terms are defined in the Act. *See* 9 U.S.C. § 401(3), (4) (defining "sexual assault dispute" as "a dispute involving a

nonconsensual sexual act or sexual contact" and "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law"). And neither the Wiretap Act nor the Washington Privacy Act bar arbitration because neither contain a "congressional command" overriding the FAA's policy requiring courts to enforce agreements to arbitrate according to their terms. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

Finally, G.P.'s claims easily fall within the scope of Turo's arbitration clause. The clause applies to any dispute between two Turo users, or between a user and Turo, "in any way relate[d]" to the use of Turo's services. Dkt. No. 29-1 at 22. G.P.'s claims against Turo and Arevalo all relate to her use of Turo because they concern the recording and dissemination of a video taken of her while she was driving a vehicle booked through Turo.

In sum, G.P. entered an enforceable arbitration agreement when signing up and booking through Turo, that agreement applies to her claims against Turo and Arevalo, and no statute bars arbitration. Accordingly, the Court will grant Turo's motion to compel arbitration. And while Arevalo's request to compel arbitration is in the alternative to dismissal, because the parties agreed to arbitrate this dispute, the arbitrator, rather than the Court, should assess the sufficiency of G.P.'s pleading. Accordingly, the Court will compel arbitration of the claims against Arevalo and otherwise deny the motion to dismiss as moot. The Court will also deny Turo's motion to strike (Dkt. No. 66) as moot.

**C. The Court Will Stay the Remaining Claims Pending Arbitration.**

"[W]hen some parties in a case have agreed to arbitrate and others have not, a district court may stay the whole action 'as a matter of its discretion and to control its docket.'" *Tarbell v. Caliber Home Loans, Inc.*, No. 220CV01679KJMCKD, 2021 WL 963837, at *3 (E.D. Cal. Mar. 15, 2021) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23

(1983)). For instance, staying the case in its entirety may be warranted to avoid duplication of effort or inconsistent results where the claims subject to arbitration involve factual disputes "coextensive with claims against nonparties to th[e] arbitration agreement." *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1045 (N.D. Cal. 2018) (quoting *Jaffe v. Zamora*, 57 F. Supp. 3d 1244, 1248 (C.D. Cal. 2014)).

All of G.P.'s claims arise out of the video that Arevalo allegedly recorded of her while she was operating the vehicle she rented through Turo. Accordingly, the arbitration of G.P.'s claims against Turo and Arevalo will likely resolve factual and legal issues central to her claims against the remaining Defendants. The Court therefore finds that judicial and litigation economy and the avoidance of inconsistent decisions counsel in favor of staying this case as to all Defendants pending the arbitration of the claims against Turo and Arevalo.

## III. CONCLUSION

Turo's motion to compel arbitration is GRANTED (Dkt. No. 65) and its motion to strike (Dkt. No. 66) is DENIED as moot. Arevalo's motion, in the alternative, to compel arbitration is GRANTED and his motion to dismiss is otherwise DENIED as moot. Dkt. No. 78.

This case is STAYED in its entirety pending arbitration of the claims against Turo and Arevalo. Turo, Arevalo, and G.P. are ORDERED to file a status report within 21 days of the completion of arbitration addressing the outcome of arbitration and whether further action in this case is required.

The Clerk is DIRECTED to terminate all pending motions.

Dated this 8th day of September, 2026.

Kymberly K. Evanson
United States District Judge